IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEXTEL SPECTRUM ACQUISITION CORP., <br><br> Plaintiff, <br><br> vs. <br><br> HISPANIC INFORMATION AND TELECOMMUNICATIONS NETWORK, INC., <br><br> Defendant. | Civil Action No. 1:07-CV-00543-RMC <br><br> Judge Rosemary M. Collyer <br><br> ORAL ARGUMENT REQUESTED |

## DEFENDANT HITN'S REPLY
## IN SUPPORT OF ITS MOTION TO DISMISS

Nextel's opposition brief does nothing to alter the inescapable conclusion that Nextel has failed to state a claim against HITN for breach of the Airtime Royalty Agreement ("ARA") by entering into the Master Royalty and Use Agreement ("MRUA"). Instead, in recognition of the glaring defect in its complaint, Nextel now seeks leave to amend. But such leave would be futile. No new allegations can change the dispositive terms of the controlling agreements or the fact that Nextel has not stated, or cannot state, a claim under Rule 12(b)(6).

Indeed, Nextel's complaint and opposition are most noteworthy for what they do *not* do: they do not allege or argue that the MRUA represents a lease that "commenced" during the right of first refusal ("ROFR") period under the ARA. Given the plain language of the ROFR and the ARA, that is equivalent to conceding that there was no breach.

Nextel makes a number of other arguments to try to save its claim, none of which has merit. Nextel relies on a tortured reading of the ARA to argue that the ROFR can be triggered by an "offer" or "commitment" made during the ROFR period, but that is wrong because (a) that is

*not* what the ARA says, and (b) in any event, the MRUA is *not* an offer or commitment to lease the Washington D Channels. The fact that the MRUA is not an offer to lease the Washington D Channels also defeats Nextel's assertion that the MRUA breached Section I.C.3 of the ARA because it is "structured to nullify" Nextel's ROFR rights.

Nextel makes other arguments based on its contention that the MRUA is a "future option" to lease the Washington D Channels, but these arguments are flawed for a variety of reasons. To begin with, an "option" (as opposed to an actual lease) does *not* trigger the ROFR rights under the ARA. Even if an option could trigger the ROFR -- and it cannot -- there are two additional problems with this argument. First, by its plain terms, the MRUA is *not* an option to lease the Washington D Channels that are the subject of the ROFR. Second, even if the MRUA were such an option and assuming that an option could trigger the ROFR -- neither of which is the case -- the law is clear that a future option is deemed made when (and if) exercised, not when given. Thus, any future option would not be considered to have been made prior to expiration of the ROFR period on February 21, 2007.

**I.     The MRUA Is Not A Lease Of The Washington D Channels.**

Nextel does not argue, or even allege, that the MRUA constitutes a lease for the Washington D Channels that "commenced" during the ROFR period that expired on February 21, 2007. Nor could Nextel ever make such an allegation. The MRUA refers only to two types of spectrum-- Initial Spectrum Capacity and Future Spectrum Capacity. *See* Ex. A to Eun Decl., Recitals. Schedule A to the MRUA makes clear that the Initial Spectrum Capacity refers to specific leases in Kansas, Florida, California and Arizona, not Washington, D.C. *See id.* at Schedule A. The MRUA also makes clear that Future Spectrum Capacity refers only to spectrum that is not encumbered by any right of first refusal and is therefore "Available." *See id.* at Ex. I, subpart (b) "Definitions". Thus the MRUA could not possibly have amounted to a lease

2

of the Washington D Channels during the time that those channels were subject to Nextel's ROFR. Accordingly, Nextel has failed to state a claim for breach of contract.

Nextel's amended pleading, even if permitted, would not change this result. While the amended pleading refers to additional facts and atmospherics, the gravamen of the claim remains that the MRUA constitutes a breach of the ARA. But nothing in the proposed First Amended Complaint can change the unambiguous language of those contracts. In addition, nothing in the proposed First Amended Complaint can change the reality that the MRUA does not constitute a lease for the Washington D Channels at all, let alone a lease that commenced prior to February 21, 2007. As such, no new allegations can alter the fact that the MRUA does not trigger the ROFR or breach the ARA.[1]

## II. The MRUA Does Not "Commit" The Washington D Channels To Clearwire.

Nextel now argues that the MRUA, although not a lease for the Washington D Channels, triggered the ROFR because it constitutes a "commit[ment]" to lease those channels sometime in the future. Opp'n at 3. This argument fails for two principal reasons.

*First*, even if the MRUA were a "commitment" to lease the Washington D Channels in the future -- and it is not -- such a "commitment" would not trigger the ROFR or breach the ARA because such a future lease cannot commence within the two-year ROFR period that expired on February 21, 2007. In an attempt to argue that a "commitment" under the MRUA to lease the Washington D Channels in the future is somehow relevant to this dispute, Nextel has come up with a novel construction of the ARA that is both tortured and unreasonable. Nextel now argues

---

[1] In its opposition brief, Nextel does not argue that the terms of the MRUA or ARA are ambiguous. Therefore, the contractual issues in dispute present a pure question of law, the disposition of which is particularly appropriate on a Rule 12(b)(6) motion. *See Appalachian Power Co. v. Federal Power Comm'n*, 529 F.2d 342, 351 (D.C. Cir. 1976) (construction of unambiguous features of written contract is "a legal problem" and "a question of law.").

that its ROFR applies to both (a) "leases" that "commence" during the two year ROFR period, and (b) "offers" that are made during the two year ROFR period, even if the underlying lease does not commence for another 50 years or so following the offer and expiration of the ROFR period. Opp'n at 2-3. There is no support for this latter construction.

Section I.C.1. of the ARA sets forth the scope of the ROFR and it is limited to "any bona fide offer to *lease* excess capacity [on the Washington D Channels] from [HITN] during any or all of the period from the expiration of the automatic renewal term [February 21, 2005] under Section I.B through two years thereafter [February 21, 2007] (the 'Right of First Refusal')." Eun Decl. at Ex. B, § I.C.1. (emphasis added). In effect, Nextel asks the Court to read this provision so that the phrase "during any or all of the period" only modifies the word "offer" and not the word "lease." Common sense and principles of contract construction dictate that, contrary to Nextel's assertions, the term "during" modifies the word that appears closest to it, namely the word "lease." *See Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 343 ("rule of the last antecedent" provides that "a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows."); *Perkins v. District of Columbia Bd. of Zoning Adjustment*, 813 A.2d 206, 211 (D.C. 2002) (The "Rule of Last Antecedent" provides that "[o]rdinarily, qualifying phrases are to be applied to the words or phrase immediately preceding and are not to be construed as extending to others more remote.") Thus, the ROFR applies to "leases" during the ROFR period, not offers during that period. Indeed, if the parties meant that any "offer" during this two year period, regardless of when the lease would commence, would trigger the ROFR, they would have inserted the phrase "made during" immediately after the word "offer." In that case, the sentence would have read that the ROFR applies to a bona fide offer *made during* that two year period to lease excess capacity from

HITN. But if the parties had done that, HITN would have been subject to having its channels locked up indefinitely by Nextel. The plain language that the parties chose to include in the ROFR, however, makes clear that this is not what the parties intended.

The remainder of Section C of the ARA confirms that the parties did not intend the result suggested by Nextel and that the ROFR applies to "leases" not "offers" during the ROFR period. Section I.C.2. informs the parties what to do if HITN decides that it wants to negotiate with a third party for a "lease" that "would *commence* anytime within two years after the expiration of the automatic renewal under Section I.B." (emphasis added). It goes on to require HITN to give to Nextel notice of such negotiations and provides that "[s]uch notice must be given one year prior to expiration of the contract." Eun Decl. at Ex. B, § I.C.2. In turn, Section I.C.3. explains the kind of notice and opportunity that HITN must give to Nextel if the negotiations referenced in I.C.2., or any other negotiations thereafter, result in HITN "receiving a bona fide offer to lease excess capacity" that would commence during the two year period per Section I.C.2. and is "acceptable to [HITN]." *Id.* at § I.C.3.

*Second*, putting aside the threshold problem that any potential future lease under the MRUA could not commence within the ROFR period, Nextel's argument that the MRUA "committed" the Washington D Channels to Clearwire during the ROFR period and intended "to create a single, unified process and terms for the acquisition of *all* [of] HITN's EBS spectrum capacity" is similarly misguided. Opp'n at 4. In support of this argument, Nextel cites an incomplete excerpt from the Recitals to the MRUA, *id.* at 3-4, excluding the last phrase of the following:

> WHEREAS, Licensee desires to make available to Clearwire, and Clearwire desires to have access to, the Commercial Spectrum Capacity that is identified on Schedule A (the "Initial Spectrum Capacity"), and any additional Commercial Spectrum Capacity of

>Licensee that is accepted by Clearwire and made subject to an IUA as provided in this Agreement (the "<u>Future Spectrum Capacity</u>"), ***all in accordance with the terms of this Agreement***;

Ex. A to Eun Decl., Recitals (emphasis added). Nextel's exclusion of this last phrase is not coincidental; the "terms of this Agreement" provide that the *only* spectrum included in the MRUA was the expressly identified Initial Spectrum Capacity and an Option on "Available" Future Spectrum Capacity. *See id.* at Ex. I, subpart (b) "Definitions". Accordingly, the Washington D Channels were *not* committed to Clearwire under the MRUA.

Moreover, the above-referenced "terms" of the MRUA provide that there are a variety of possibilities where the parties can satisfy all of their obligations under, or even terminate, the MRUA without ever resulting in a lease of the Washington D Channels to Clearwire. The MRUA provides that the sum of the "Prepaid Royalties" paid by Clearwire in consideration for the Initial Spectrum Capacity and the Option for Future Spectrum Capacity, which is mentioned by Nextel in its opposition brief, Opp'n at 4, is finite. Thus, when the "Prepaid Royalties" have been drained by Clearwire to lease certain channels that become Available as Future Spectrum Capacity, the MRUA will terminate. *See* Ex. A to Eun Decl. at § 9.01. Therefore, there is a strong possibility that the Washington D Channels at issue here will never be leased to Clearwire pursuant to the MRUA. For example, Section 1.02(c) provides that should Clearwire desire to lease HITN's spectrum in Puerto Rico, HITN may require that Clearwire lease *all* of its spectrum in Puerto Rico under certain terms. *See id.* at § 1.02(c).[2] It is entirely possible that such a lease would deplete the balance of the Prepaid Royalties and the MRUA would terminate by its express terms. Moreover, Section 9.01 states that the MRUA can be unilaterally terminated by

---

[2] Nextel again complains of the "heavy redactions" that appear in the publicly-filed MRUA and argues that without actually seeing the complete version of Section 1.02 of the MRUA, it is impossible to determine if that provision references the Washington D Channels at issue. *See* Opp'n at 11 n.4. This is not candid. The full, unredacted MRUA was attached to HITN's memorandum in support of its motion to dismiss. *See* Eun Decl. at Ex. A.

HITN by returning the balance of the Prepaid Royalties that has not been used by Clearwire for accessing Future Spectrum Capacity.  *See id.* at § 9.01.  These possibilities underscore that the MRUA did not contemplate or effect a transfer of *all* of HITN's spectrum.

In addition, not only are the Washington D Channels not part of a "commitment" to lease all of HITN's spectrum, the MRUA is not, as Nextel asserts, "sufficiently definite to establish that it is an 'offer [for the Washington D Channels] capable of acceptance'" Opp'n at 7.  To the contrary, the MRUA's terms provide that when future spectrum becomes Available, HITN and Clearwire would still need to negotiate the terms of such a lease "in good faith based on the fair market value" of that spectrum "at the time the Option is exercised."  *See* Eun Decl. at Ex. A, § 1.02(b).  And, as explained above, under the MRUA, if HITN did not wish to accept the terms offered by Clearwire during those negotiations, it could return the unused portion of the Prepaid Royalties and terminate the MRUA.  Thus, even if the MRUA somehow could be read as an "offer" to lease all of its spectrum, including the Washington D Channels, at some time in the future, and it cannot, its terms are not sufficiently definite for it to be an enforceable offer to agreement as, among other things, both the specific spectrum at issue *and* its price remains unknown and uncertain.

Implicitly recognizing the weakness of its claim that the MRUA directly triggered its ROFR, Nextel alternatively argues that HITN has violated Section I.C.3. of the ARA, which states that HITN "shall not accept any offer to lease" the Washington D Channels "that includes terms or conditions that have the purpose or effect" of preventing Nextel from exercising the ROFR.  Opp'n at 5.  But as explained above, no fair reading of the MRUA can sustain the conclusion that it is "an offer to lease" the Washington D Channels.  As such, there is no support

7

for Nextel's assertion that the MRUA was specifically "structured to nullify the ROFR" in the ARA. *See id.*

In sum, the MRUA is *not* a commitment to lease the Washington D Channels to Clearwire in the future. Even if it were, that would not constitute a breach of the ARA because the ROFR, by its terms, could not be triggered by commitments made during the two year ROFR period to enter into a lease for the Washington D channels sometime thereafter. The ROFR applies only to "leases" of the Washington D Channels that "commence" during the two year period ending on February 21, 2007. Nextel's argument for a contrary interpretation is nothing more than an impermissible request to reform the ARA, or an attempt to gain through litigation that which it did not obtain through contract negotiation.

### III. The MRUA Is Not An Option Contract For The Washington D Channels That Could Trigger The ROFR.

Even if Nextel's assertion that a mere "offer" to lease the Washington D Channels could trigger the ROFR, regardless of when the lease was to begin, were not blatantly wrong -- and it is -- Nextel's argument that the MRUA triggers that right because it is a "binding option contract" fails for a variety of reasons. Opp'n at 8. As a threshold matter, the MRUA is not a binding option for the Washington D Channels. Contrary to Nextel's assertion that Clearwire has "the power *to compel* HITN to sell spectrum to it immediately as it becomes available" *id.* at 8, as explained previously, the Washington D Channels might never be leased under the MRUA because all of the Prepaid Royalties may be expended or HITN may exercise its unilateral right at any time to return the consideration paid by Clearwire in exchange for the return of the Option, thereby extinguishing the term of the MRUA. *See* Eun Decl. at Ex. A, § 9.01. Thus, under the MRUA there is no guarantee that certain "Future Spectrum Capacity" will ever become "Available" or will be leased by Clearwire while the MRUA remains in force. The

8

inclusion of these provisions directly contradicts Nextel's assertion that through this "option" HITN "formed the present intent to transfer any and all of its spectrum to Clearwire while NAC's ROFR was in force." Opp'n at 10.

But even if Nextel could establish that the MRUA contained an option specifically to lease the Washington D Channels in the future -- and it cannot -- Nextel still cannot show that the purported grant of that option constitutes an "offer" that was "made" during the ROFR period.[3] Nextel's sole support for its position, which relies exclusively on one California decision, is that such a future option "relate[s] back to the time of the giving of the option" because it is evidence of an intention to sell at the time it is given. Opp'n at 10.

The *Rollins v. Stokes* case, 123 Cal. App. 3d 701 (1981), is not persuasive authority and is readily distinguishable. In *Rollins*, the holder of the option to purchase specific property sued the lessor and lessee after the lessor had allowed the lessee to exercise its right of first refusal and purchase the subject property. The court found "significant[]" and "persuasive" the fact that although, like here, the plaintiff's option could only be exercised *after* the right of first refusal had expired, the lessor nonetheless treated the option clause as equivalent to an "offer for the purchase of the subject property so as to trigger" the lessee's preemptive right and gave notice to the lessee. *Id.* at 711. There is no similar conduct here. In this case, for all the reasons stated above, HITN did *not* view the option for Available Future Spectrum Capacity under the MRUA as an offer for the lease of the Washington D Channels. Moreover, unlike the situation in *Rollins*, the Washington D Channels are not specifically identified in the Option for Future Spectrum Capacity in the MRUA, the price is not determined, those channels potentially would

---

[3] This discussion ignores for the moment the fact that, as discussed above, "offers made" during the ROFR period do not trigger Nextel's rights under the ARA.

never be part of the Option granted to Clearwire thereunder; and HITN has the right to repay at any time the unused portion of the Prepaid Royalties and terminate the MRUA.

Nextel's argument also ignores, and is inconsistent with, the applicable law. As stated previously, Washington D.C. law governs the interpretation of the ARA. *See* Eun Decl. at Ex. B, § XIII.H. Under Washington, D.C. law, "'[a]n option to [lease] … is not a contract to [lease] …, as optionee has the right to accept or to reject the offer, in accordance with its terms, and is not bound.'" *West End Tenants Ass'n v. District of Columbia*, 640 A.2d 718, 728 (D.C. 1994) (finding third party's option to purchase property did not trigger right of first refusal) (*quoting* Black's Law Dictionary 1094 (6th ed. 1990)); *see also Dodek v. CF 16 Corp.*, 537 A.2d 1086, 1095 (D.C. 1988) (contract was "an option contract, not a purchase-and-sale agreement."). Thus, courts have determined that the grant of a mere "option" to lease, does not trigger a prior right of first refusal to lease the same property. *See West End*, 640 A.2d at 728; *Seward v. Weeks*, 360 Mass. 410 (1971) (right of first refusal, which required that "[i]n the event of a contemplated sale" during lease term lessor had to provide written notice of the terms upon which the sale would be made, was not triggered by sale to third party which by its terms would not occur until *after* the right of first refusal expired).

In this case, the option to lease Future Spectrum Capacity when it becomes Available was not an "offer to lease" the Washington D Channels. Rather, as explained above, the only "option" contained in the MRUA was for the purchase of unidentified future spectrum, for an unknown and indefinite price, as it becomes "Available." In short, there was no "binding option" to lease the Washington D Channels under the MRUA. But even if that were not the case, the applicable law holds that an option is made when it is exercised, not when it is granted, and thus putting aside all the hurdles Nextel faces that defeat its claim, there is no reading of the

MRUA that would provide that it triggered or breached Nextel's ROFR in the ARA. Nextel's attempt to *ex post facto* extend the reach of its bargained-for contractual rights is unavailing and should not be permitted.

## CONCLUSION

For the foregoing reasons, and those presented in HITN's opening brief, HITN respectfully requests that the Court dismiss the Complaint with prejudice pursuant to Rule 12(b)(6).

Dated: April 16, 2007

Respectfully submitted,

_____
Eunnice H. Eun (DC Bar #500203)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Telephone:   (202) 879-5000
Facsimile:   (202) 879-5200

William H. Pratt
Joseph Serino, Jr.
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900

Rudolph J. Geist (DC Bar # 461064)
RJGLAW LLC
1010 Wayne Avenue, Suite 950
Silver Spring, MD 20910
Telephone:   (301) 589-2999
Facsimile:   (301) 589-2644

*Attorneys for Defendant Hispanic Information and Telecommunications Network, Inc.*