IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEXTEL SPECTRUM ACQUISITION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>HISPANIC INFORMATION AND TELECOMMUNICATIONS NETWORK,<br><br>Defendant. | Civil Action No.: 1:07-CV-00543-RMC |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR
LEAVE TO FILE FIRST AMENDED COMPLAINT**

Plaintiff Nextel Spectrum Acquisition Corporation ("NAC") sought leave to file a First Amended Complaint on April 6, 2007. NAC's Amended Complaint more accurately explains the tight relationship between Defendant Hispanic Information and Telecommunications Network ("HITN") and Clearwire Corporation ("Clearwire") and includes additional allegations supporting NAC's breach of contract claim. HITN opposed NAC's request for leave on April 16, 2007, claiming that NAC's request is futile because HITN's March 23, 2007, motion to dismiss will, according to HITN, be granted. Not only does NAC's First Amended Complaint moot HITN's motion to dismiss, but HITN's assertion here is both presumptuous and legally erroneous.

Leave to amend "shall be freely given when justice so requires." Fed R. Civ. P. 15(a). Justice clearly allows for an amendment here, where the complaint was filed just two months ago, and there would be absolutely no prejudice to HITN. Acknowledging as much, HITN's only objection to the proposed amendment is that it is supposedly futile. Denying leave on the grounds of "futility" should only be done if the complaint, as amended, would be subject

to dismissal. As the Supreme Court explained in *Foman v. Davis*: "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182, *quoted in Boyd v. District of Columbia*, 465 F. Supp. 2d 1, 3 (D.D.C. 2006). Because an amendment is futile only "if the proposed claim would not survive a motion to dismiss," *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir.1996), futility is not really an objection to amendment so much as a substantive attack on the amended pleading akin to a motion to dismiss. *See Lee v. Winter*, 439 F. Supp. 2d 82, 84 -85 (D.D.C. 2006). Thus, as a practical matter, an opposition based on "futility" can only succeed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See also Boyd*, 465 F. Supp. 2d at 4 (rejecting assertion that amendment would be futile where amended complaint stated claim sufficiently at pleading stage). In this case, HITN cannot meet the burden of demonstrating a right to dismissal. Indeed, HITN ignores the stringent rules governing such a motion and the liberality with which pleadings and motions to amend should be considered.

As noted above, a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Potts v. Howard Univ.*, No. Civ. A 04-1856, 2007 WL 15925 *1 at *2 (D.D.C. Jan. 4, 2007), quoting *Warren v. District of Columbia*, 353 F.3d 36, 37 (D.C. Cir. 2004). "[T]he court must treat the complaint's factual allegations — including mixed questions of law and fact — as true and draw all reasonable inferences therefrom in the plaintiff's favor." *Id.*(citing *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003)).

"The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests." *Id.*, (citing *Kingman Park*, 348 F.3d at 1040). NAC's First Amended Complaint easily satisfies this standard. The First Amended Complaint alleges, among other things;

- HITN and NAC entered into an Airtime Lease Agreement ("Lease Agreement") which allowed NAC to lease HITN's excess spectrum capacity in and around the Washington D.C. area (the "DC Spectrum Rights"). The Lease Agreement gave NAC a valid and enforceable Right of First Refusal ("ROFR") that could be exercised until February 21, 2007.

- Under the ROFR, NAC had the "exclusive right to match the material terms and conditions of any bona fide offer to lease excess capacity from [HITN]."

- The ROFR was triggered when HITN "desire[d] to enter into an agreement to lease excess capacity" As NAC's Complaint and First Amended Complaint adequately allege, the ROFR was triggered, but NAC was denied its bargained for right to exercise the ROFR.

- HITN also promised not to enter into any agreement that had the purpose or the effect of preventing [NAC] from exercising its ROFR. This obligation was also breached by HITN.

- HITN and Clearwire have entered into an extensive web of agreements and other business arrangements that *require* HITN to give Clearwire exclusive rights to HITN's available spectrum; including the DC Spectrum.

- One of the agreements between HITN and Clearwire that triggered the ROFR is the Master Royalty and Use Agreement ("MRUA"). Although it was entered on October 4, 2006 (only discovery will expose when the MRUA was actually negotiated – a fact that is highly relevant to this lawsuit), HITN failed to disclose the MRUA until Clearwire was finally forced to do so (in heavily redacted form) in connection with Clearwire's IPO.

- In the MRUA, Clearwire was promised all of HITN's "Available Spectrum" (spectrum that was unencumbered by rights of first refusal at that time, such as the channels listed in Schedule A) and an option ("Option") for all other spectrum that "becomes Available", i.e., unencumbered by any ROFR, during the term of the MRUA. Clearwire's Option under the MRUA includes the spectrum rights subject to NAC's ROFR.

3

- In exchange for these rights, Clearwire paid handsomely in the form of economic royalties and "additional consideration" for the Option on HITN's "Future Spectrum."

- The "additional consideration" was an advance payment for the currently encumbered spectrum, including the DC Spectrum. Clearwire and HITN knew that NAC's ROFR would expire on February 22, 2007. In fact, Clearwire admitted that it was going to "wait out" NAC's ROFR before it exercised the Option on the DC Spectrum.

- HITN clearly breached the Lease Agreement by entering into, among other things, the MRUA which evidences HITN's desire to lease NAC's spectrum rights to Clearwire while NAC's ROFR was in full force and effect. HITN also breached the Lease Agreement because the MRUA has the explicit purpose and effect of preventing NAC from exercising the ROFR; something that HITN promised in the Lease Agreement that it would not do.

- The Option for "Future Spectrum" immediately terminated HITN's interest in the DC Spectrum and transferred that "bundle of interests" to Clearwire. The Option provided that Clearwire would tender fair-market value for the DC Spectrum once the DC Spectrum became available, and that HITN retained no right to withhold the DC Spectrum.

- HITN sold its ability to negotiate the rights for the DC Spectrum during the ROFR period with anyone but Clearwire. HITN's double dealing breached the Lease Agreement and nullified NAC's ROFR.

The sum of the allegations is a straightforward breach of contract claim that has been properly pled and can easily withstand a R. 12(b)(6) challenge. NAC has clearly alleged that HITN breached the lease agreement by (i) not honoring NAC's ROFR for the DC Spectrum and (ii) by entering into an agreement that has the purpose or the effect of preventing NAC from exercising its ROFR. NAC has plainly stated a claim for available relief.

HITN argues that the "Available Spectrum" provisions of the MRUA did not apply to the DC Spectrum because it was not listed in Schedule A and because it was encumbered at the time the MRUA was entered. HITN's argument misses the mark for three reasons. First, HITN cannot, and does not, counter NAC's allegations that HITN breached its

contract by accepting an offer to lease excess capacity that included terms "that have the purpose or the effect of preventing" NAC from exercising its ROFR—and NAC's allegations on this point must be accepted as true for purposes of a 12(b)(6) motion (or, in this case, a futility claim). This alone is a basis to grant NAC's motion for leave to file the First Amended Complaint and deny HITN's stale motion to dismiss. Second, whether the DC Spectrum was listed in Schedule A as "Available Spectrum" or not, the various agreements between HITN and Clearwire, including the MRUA, clearly contemplate that Clearwire is paying for all of HITN's spectrum, regardless of its present, encumbered state.[1] Finally, whether Clearwire and HITN intended that the DC Spectrum to be covered by the MRUA and the numerous other agreements between them is a question of fact, or at best a mixed question of law and fact, which cannot properly be resolved on a motion to dismiss. *See Davis v. Chevy Chase Fin. Ltd.*, 667 F.2d 160, 169 (D.C. Cir. 1981) ("courts should be reluctant to dispose summarily of claims involving the interpretation of contracts," and duly noted that "[t]he meaning of a contract is . . . usually a question of fact").

HITN's attempt to muddle the facts with allegations that just one of the contracts alleged in the First Amended Complaint is for indefinable "future spectrum" or that there is a different lease agreement is a red herring. NAC has alleged all relevant facts to establish various breaches of the Lease Agreement. Thus, HITN's futility argument is without merit. NAC respectfully requests that this Court grant its motion for leave to file a First Amended Complaint

---

[1] One particular statement in HITN's Reply Memorandum exposes the fallacy of HITN's motion to dismiss. In attempting to assert the argument that the MRUA does not encompass the DC spectrum; HITN states: "Therefore, there is a *strong possibility* that the Washington D Group channels at issue here will never be leased to Clearwire." HITN Reply Memorandum at 6. (Emphasis added.) That any such "possibility" exists under a contract negotiated and accepted during the period when NAC had an enforceable ROFR demonstrates that NAC has stated a claim and, for present purposes, shows that NAC's proposed amendment would not be futile.

to more accurately set forth how the various agreements between HITN and Clearwire constitute a breach of the Lease Agreement.

                                      Respectfully submitted,

                                      BRYAN CAVE LLP

                                      /s/ Rodney F. Page
                                      Rodney F. Page (D.C. Bar #37994)
                                      Stacey Ormsby (D.C. Bar # 490995)
                                      700 Thirteenth Street, N.W.
                                      Suite 700 Washington, D.C.
                                      20005-3960
                                      Telephone: (202) 508-6000
                                      Facsimile: (202) 508-6200

                                      Craig S. O'Dear
                                      Robert J. Hoffman
                                      James D. Lawrence
                                      3500 One Kansas City Place
                                      1200 Main Street
                                      Kansas City, Missouri 64105
                                      Telephone: (816) 374-3200
                                      Facsimile: (816) 374-3300

                                      ATTORNEYS FOR PLAINTIFF

Dated: April 26, 2007