UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NEXTEL SPECTRUM ACQUISITION CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 07-543 (RMC) |
| HISPANIC INFORMATION AND TELECOMMUNICATIONS NETWORK, INC., | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on a Motion to Vacate, Alter, or Amend Judgment Dismissing First Amended Complaint ("Pl.'s Mot. to Amend") [Dkt. #20] filed by Plaintiff Nextel Spectrum Acquisition Corporation ("Nextel"). Nextel requests, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, that the Court vacate, alter, or amend its Memorandum Opinion and Order issued August 29, 2007 [Dkt. ## 18 & 19] granting the Motion to Dismiss [Dkt. # 3] filed by Defendant Hispanic Information and Telecommunications Network, Inc. ("HITN"), and grant Nextel leave to file a Second Amended and Supplemental Complaint pursuant to Rules 15(a) and (d) of the Federal Rules of Civil Procedure. *See* Pl.'s Mot. to Amend at 1. HITN contends that Nextel has failed to satisfy the stringent Rule 59(e) standard, that Nextel's motion to vacate, alter or amend the Court's judgment should be denied, and that Nextel's request to amend the complaint should likewise be denied as futile. *See* Def.'s Opp'n to Pl.'s Mot. to Amend [Dkt. #21].

## I. BACKGROUND FACTS

Nextel Spectrum Acquisition Corporation and Hispanic Information and Telecommunications Network, Inc. were parties to a contract – the Airtime Royalty Agreement (the "Royalty Agreement") – whereby Nextel leased from HITN certain Educational Broadband Service ("EBS") channels regulated by the Federal Communications Commission ("FCC"), also referred to as "spectrum," in and around Washington, D.C. (the "DC Spectrum"). *See* Pl.'s Mem. in Support of Mot. to Amend. ("Pl.'s Mem.") at 2. The original parties to the lease were George Washington University ("GWU") and Eastern Cable Networks Corporation ("ENET"). *Id.* Nextel succeeded to ENET's rights in or around 2004, and, in 2005, HITN acquired the underlying spectrum from GWU subject to the surviving rights and obligations under the Royalty Agreement. *Id.* The Royalty Agreement contained a right of first refusal clause ("ROFR"), pursuant to which Nextel was given "the exclusive right to match the material terms and conditions of any bona fide offer to lease excess capacity from [HITN] during any or all of the period from the expiration of the automatic renewal term . . . through two years thereafter." Def.'s Mem. in Support of Mot. to Dismiss ("Def.'s Mem."), Ex. B § I.C.1. Neither party disputes that the term of the Royalty Agreement, with all automatic renewals, expired on February 21, 2005 and two years thereafter came in February 2007. *Id.*, Ex. B § I.B.1.

The instant dispute revolves around the interplay between Nextel's ROFR and HITN's contracts with Clearwire Corporation and its affiliates ("Clearwire") that address leasing HITN excess EBS capacity in various markets. *See* Am. Compl. ¶¶ 22-41 [Dkt. # 9]. Nextel alleges that HITN and Clearwire entered into an "extensive web of agreements that requires HITN to tender exclusively to Clearwire use of any available spectrum HITN has or in which it acquires an interest."

*Id.* ¶ 22. Most relevant among these agreements is a Master Royalty and Use Agreement between HITN and Clearwire Spectrum Holdings II LLC, dated October 4, 2006 (the "Master Agreement"), which allegedly provides Clearwire with an "exclusive" right to all of HITN's licensed spectrum. *See* Am. Compl. ¶¶ 36, 38; Def.'s Mem., Ex. A. The Master Agreement states:

> (b) <u>Option for Future Spectrum Capacity</u>. Licensee grants Clearwire an option (the "<u>Option</u>") to enter into IUAs with Licensee in respect of any and all spectrum (including, but not limited to, the Commercial Spectrum Capacity, EBS and BRS ("<u>Spectrum</u>") on FCC Licenses held by Licensee that is Available or that becomes Available during the Term, at prices to be negotiated in good faith based on the fair market value ("<u>FMV</u>") of such Spectrum at the time the Option is to be exercised, provided, however, that the negotiated price shall not exceed . . . per MHZ POP. The Option shall be exercisable in Clearwire's sole discretion each time Spectrum of Licensee or its Affiliates becomes Available during the Term . . . .

*See* Am. Compl. ¶ 40; Def.'s Mem., Ex. A at 6-7. The term "Available" is defined in the Master Agreement as spectrum that "is not encumbered by any Lien, including, but not limited to, any purchase option, right of first refusal, or other contractual obligation of [HITN]." Def.'s Mem., Ex. A, Exhibit 1 subpart (b) "Definitions."

On March 26, 2007, HITN moved the Court to dismiss Nextel's Complaint[1] with prejudice for failure to state a claim under Rule 12(b)(6). HITN argued that pursuant to Section I.C.1 of the Royalty Agreement, only leases that would commence within the two-year period following the expiration of the Royalty Agreement could trigger the ROFR, and the Complaint failed to allege any such lease. *See* Def.'s Mem. at 7-8. Nextel, in opposition, argued that HITN had breached the Royalty Agreement by denying Nextel the ability to exercise a valid right of first refusal, and that

---

[1] References to the "Complaint" are to the First Amended Complaint for Specific Performance, Injunctive and Other Relief filed by Nextel on May 14, 2007 ("First Amended Complaint" or "Complaint").

3

HITN entered into separate agreements with Clearwire that had the specific purpose and effect of preventing Nextel from exercising the ROFR, something which HITN promised not to do in the Royalty Agreement. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss at 1 [Dkt. #5]. This Court held a hearing on HITN's Motion to Dismiss on August 16, 2007, and both parties presented oral arguments. The Court specifically inquired and heard argument, *inter alia*, on the parties' different interpretations of Section I.C.1, I.C.2 and I.C.3 of the Royalty Agreement. The Court issued a Memorandum Opinion and Order on August 29, 2007, granting HITN's motion to dismiss with prejudice, *see Nextel Spectrum Acquisition Corp. v. HITN*, No. 07-543, 2007 WL 2446213 (D.D.C. Aug. 29, 2007), and on September 13, 2007, Nextel filed the pending Motion to Vacate, Alter, or Amend Judgment Dismissing First Amended Complaint ("Motion to Amend"), which includes a request for leave to amend and supplement the Complaint.

## II. LEGAL STANDARDS

"A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Fox v. Am. Airlines Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). A Rule 59(e) motion is not "simply an opportunity to reargue facts and theories upon which a court has already ruled." *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995). Nor is it an avenue for a "losing party . . . to raise new issues that could have been raised previously." *Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993). Further, while leave to amend a complaint "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), a motion to amend should be denied if the amendment would be futile because the proposed claim would not survive a motion to dismiss.

*James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002). Additionally, once a final judgment has been entered, a motion to amend a complaint under Rule 15(a) may not be granted "unless the plaintiff 'first satisfies Rule 59(e)'s more stringent standard' for setting aside that judgment." *Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 1994) (quoting *Firestone*, 76 F.3d at 1208).

### III. DISCUSSION

Nextel argues that the Court committed three distinct clear errors of law in granting the Defendant's Motion to Dismiss. *See* Pl.'s Mot. to Amend at 1-2. It requests that the Court vacate, alter or amend its judgment and grant Nextel leave to file a Second Amended and Supplemental Complaint ("Second Amended Complaint").

#### A. Motion to Vacate, Alter or Amend the Judgment

Nextel argues that the Court erred in granting HITN's Motion to Dismiss because:

> (i) the Order [granting the Motion to Dismiss] failed to address a separate and independent breach of contract claim that is pleaded in detail in the First Amended Complaint; (ii) the Court erred in declaring the "unambiguous" meaning of the contract because [Nextel's] proffered interpretation is reasonable from the contract language; (iii) [Nextel's] interpretation of the contract is reasonable and, as between the two interpretations presented to the Court, is the only one which can be read in harmony with the other provisions of the contract; and (iv) the Court improperly converted HITN's Motion to Dismiss to a Motion for Summary Judgment without complying with Fed. R. Civ. P. 12(b).

Pl.'s Mem. at 1-2.

##### 1. *Interpretation of the ROFR Provision*

While Nextel alleges two distinct errors by the Court in declaring the contract "unambiguous" and not accepting its own interpretation as reasonable, Nextel readily concedes that

these claims comprise only one issue. *See* Pl.'s Mot. to Amend at 1. Nextel succinctly argues that "[t]he Court erred in declaring the 'unambiguous' meaning of the contract because the contract language is reasonably susceptible to multiple interpretations, thereby raising disputed fact issues." *Id.*

The Court's Opinion noted that "[a]lthough they read the agreement differently, both parties agree that the [Royalty Agreement] is plain on its face and unambiguous." Mem. Op. at 6. Nextel now argues that it did not agree that the contract language at issue is "unambiguous." Pl.'s Mem. at 9-11. However, this specific issue was raised during oral argument and Nextel did not make the objection it offers now. *See* Mot. to Dismiss Hr'g Tr. 4:22-4:24, Aug. 16, 2007 (HITN's counsel informed the Court that "the parties agree that the ROFR language is unambiguous. Nobody is arguing that it's ambiguous."); *see also id.* 16:11-17:17 (counsel for Nextel did not object or respond to this assertion, but instead explained how Nextel would interpret the relevant language). After the oral argument, the Court "[a]greed with the parties that the plain meaning of the contract [was] unambiguous." Mem. Op. at 7. Whether a contract is ambiguous is a question of law for the court. *See Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983). A contract is not rendered ambiguous merely because the parties disagree over its proper interpretation. *Id.* Instead, a contract is ambiguous when, and only when, it is, or the provisions in controversy are, reasonably or fairly susceptible to different interpretations or of two or more meanings. *See Burbridge v. Howard Univ.*, 305 A.2d 245, 247 (D.C. 1973). The choice among reasonable interpretations of an ambiguous contract is for the fact-finder to make based on the evidence presented by the parties to support their respective interpretations. *Howard Univ. v. Best*, 484 A.2d 958, 966 (D.C. 1984).

Nextel's current motion is simply an attempt to offer more argument why its

interpretation is correct. A motion under Rule 59(e) is not an opportunity to rehash arguments already raised. *See Sieverding v. Am. Bar Assoc.*, 239 F.R.D. 288, 290 (D.D.C. 2006). Because the Court has already considered, and decided, the interpretation of the Royalty Agreement and the ROFR contained therein, the Court will not reconsider the same arguments advocated by Nextel.

2. *Breach of Section I.C.3 of the Airtime Royalty Agreement*

Nextel further contends that the Court "erred in dismissing the First Amended Complaint in its entirety without ruling on the second alleged breach of Section I.C.3." Pl.'s Mem. at 9. Nextel refers the Court to Section I.C.3 of the Royalty Agreement which states in relevant part that "[HITN] shall not accept any offer to lease excess capacity that includes terms or conditions that have the purpose or the effect of preventing [Nextel] from exercising its Right of First Refusal." Am. Compl., Ex. A, § I.C.3. Nextel argues that HITN breached this provision through its series of agreements with Clearwire. Specifically, Nextel alleges that "the purpose of excluding the DC Spectrum [from the Master Agreement] was to circumvent the ROFR while still allowing HITN to sell, and allowing Clearwire to buy, the rights to the DC Spectrum without giving [Nextel] its bargained for right to match the offer." Pl.'s Mem. at 8. The Court heard and considered this claim previously. While it implicitly rejected the claim in its Memorandum Opinion, the Court clarifies that this claim is premised upon an interpretation of the contract the Court has now twice rejected.

Nextel's claim that Section I.C.3 was breached presupposes that (1) the ROFR applies to any lease of the DC Spectrum whenever the offer to lease was made between February 21, 2005 and February 21, 2007, regardless of when the lease would commence; and (2) Clearwire made such an offer to HITN between February 21, 2005 and February 21, 2007. The ROFR, however, grants Nextel a right of first refusal *only* with respect to an offer to lease the DC Spectrum to commence

between February 21, 2005 and February 21, 2007.

The relationship between HITN and Clearwire never triggered the ROFR as it is properly interpreted. First, the Master Agreement did not constitute a lease that would commence between February 21, 2005 and February 21, 2007, and did not bind HITN to a lease that would commence between such dates. The Master Agreement only governed spectrum "that is Available or becomes Available" during [the term of the Master Agreement], *see* Def.'s Mem., Ex. A § 1.02(b), and the term "Available" was defined in the Master Agreement as spectrum that "is not encumbered by any Lien, including but not limited to, any purchase option, *right of first refusal*, or other contractual obligation of [HITN]," *id.*, Ex. A, Exhibit 1 subpart (b) "Definitions" (emphasis added). Thus, the Master Agreement specifically excluded the possibility of Clearwire leasing any DC Spectrum from HITN to commence between February 21, 2005 and February 21, 2007. As a result of that exclusion, the Master Agreement did not envision or permit a breach of the ROFR, and likewise could not have served to "prevent[] [Nextel] from exercising its Right of First Refusal," *see* Am. Compl., Ex. A, § I.C.3. Similarly, the August 31, 2007 request by HITN-Washington D.C. D, L.L.C. (an affiliate of HITN and assignee of the rights to the DC Spectrum) for approval from the FCC to enter into a new long-term lease with Clearwire for HITN's DC Spectrum did not, and could not, serve to "prevent[] [Nextel] from exercising its Right of First Refusal," *see* Am. Compl., Ex. A, § I.C.3.[2] The Royalty Agreement simply did not grant such an extensive right; the ROFR ceased

---

[2] Nextel alleges that on August 31, 2007, "[d]espite HITN's . . . assertions to [Nextel], HITN-Washington D.C. D, L.L.C. request[ed] approval from the FCC to enter into a new long-term lease with Clearwire for the DC Spectrum." Pl.'s Mem. at 4. This request was made two days after the Court's Memorandum Opinion and Order granted HITN's Motion to Dismiss. Nextel alleges that this action further injured its rights in the Second Amended Complaint which it seeks leave to file. *See* Pl.'s Mot. to Amend, Ex. A ¶ 60. Leave to file a Second Amended Complaint will not be granted, but the Court assumes these facts to be true.

to bind HITN after February 21, 2007. Thus, because Clearwire never made an offer to lease excess DC Spectrum capacity from HITN by a lease to commence on a date between February 21, 2005 and February 21, 2007, it was impossible for HITN to accept any offer that could have prevented Nextel from exercising its ROFR to lease excess DC Spectrum capacity during the 2-year ROFR period. Consequently, Nextel's allegation of a second breach of the Royalty Agreement was without merit.[3]

### C. *Conversion of Motion to Dismiss into a Motion for Summary Judgment*

Nextel finally contends that the Court "erred in converting the Motion to Dismiss to a Motion for Summary Judgment without providing [Nextel] notice and an opportunity to present evidence, as required by Rule 12(b)." Pl.'s Mot. to Amend at 2. This argument has no basis.

First, Nextel argues that the Court's statement that "'[Nextel] has never used any of the contested spectrum for actual broadcasting and it lies fallow even yet . . . [and] [Nextel's] interest in leasing the spectrum . . . was to control the asset[]' . . . reveals a fundamental misunderstanding of the purpose, and indeed, need for preemptive rights in spectrum leases." Pl.'s Mem. at 18 (citing Mem. Op. at 5). This statement by the Court and the underlying facts it allegedly assumes were wholly irrelevant to the Court's interpretation of the Royalty Agreement. The Court never addressed the purpose of preemptive rights in its analysis of the Royalty Agreement and its ROFR provision. *See* Mem. Op. at 6-8.

Similarly, Nextel seizes on the Court's statement that "[c]arried to its logical conclusion, [Nextel's] argument would lead to absurd results," arguing that the Court improperly relied on extrinsic evidence supplied by HITN's counsel or made its own factual findings about the

---

[3] Importantly, Nextel does not allege, nor does the record indicate, that it made any effort to exercise the ROFR on a timely basis, *i.e.*, at any time before February 21, 2007.

spectrum industry that were not alleged in the Complaint. *See* Pl.'s Mem. at 8 (citing Mem. Op. at 8). Nextel, however, ignores the Court's statement in the same paragraph refuting Nextel's proffered interpretation, explaining that "the [Royalty Agreement] clearly indicates otherwise. . . . Here the parties signed a clear agreement for the lease of excess capacity in the DC Spectrum for a period to commence February 21, 1995, with all obligations terminating on February 21, 2007." Mem. Op. at 9. The Court's ruling was based solely on the four corners of the Royalty Agreement and the allegations in the Complaint. It did not rely upon facts from outside the pleadings, nor did it convert HITN's Motion to Dismiss to a Motion for Summary Judgment.

### B. Motion for Leave to File Second Amended and Supplemental Complaint

Because the Court denies Plaintiff's Rule 59(e) motion to vacate, alter or amend the Court's judgment, it will also deny Plaintiff's motion for leave to file its Second Amended Complaint under Rules 15(a) and (d) as moot. Once a final judgment has been entered, a motion to amend a complaint under Rule 15(a) should not be granted "unless the plaintiff 'first satisfies Rule 59(e)'s more stringent standard' for setting aside that judgment." *Ciralsky*, 355 F.3d at 673 (quoting *Firestone*, 76 F.3d at 1208). The same requirement applies for a motion to amend a complaint under Rule 15(d). *See United States v. Int'l Bhd. of Elec. Workers, Local No. 130*, 72 F.R.D. 507, 513 (E.D. La. 1976), *aff'd* 573 F.2d 1308 (5th Cir. 1978) ("[N]either Rule 15(c), permitting the relation back of amendments, nor Rule 15(d), permitting supplemental amendments, is applicable in a post-judgment situation.") (citing 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1489 (1971)); *accord Bank of India v. Trendi Sportswear, Inc.*, No. 89 Civ. 5996, 2002 U.S. Dist. LEXIS 14801, at *9-10 (S.D.N.Y. August 12, 2002). Plaintiff has not satisfied that standard. Accordingly, the Court will deny its motion for leave to further amend its Complaint.

## IV.  CONCLUSION

The Court granted Defendant's Motion to Dismiss.  Plaintiff moves the Court to vacate, alter or amend its judgment.  Finding no merit to Plaintiff's motion, the Court will deny it. Consequently, the Court will deny Nextel's motion to file a Second Amended and Supplemental Complaint as moot.  A memorializing order accompanies this Memorandum Opinion.


Date: July 31, 2008                                     /s/
                                              ROSEMARY M. COLLYER
                                              United States District Judge